IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEVIN SHIMKO,

                      Plaintiff,                      OPINION & ORDER

    v.

                                                    11-cv-831-wmc

JEFF WAGNER TRUCKING, LLC,
JEFFREY M. WAGNER and HENRY
A. WAGNER,

                      Defendants.

---

Since its beginning, this case has turned on one issue: the applicability of the Truth-In-Leasing regulations, 49 C.F.R. § 376, to the two contracts between plaintiff Devin Shimko and defendants. Shimko alleges that defendants violated those regulations in various respects.[1] Defendants have moved for summary judgment (dkt. #41), arguing that: (1) the regulations are inapplicable to the contracts as written; (2) the contracts cannot be reformed; and (3) Henry Wagner was not involved in the violations Shimko alleges.[2] Because genuine disputes of fact exist on each of these points, the court will deny defendants' motion for summary judgment.

PROCEDURAL BACKGROUND

On December 26, 2007, Shimko entered into two separate contracts with defendant JWT: (1) an "Equipment Lease," through which Jeff Wagner Trucking, LLC ("JWT")

---

[1] For example, Shimko alleges that defendants (1) failed to include language required by 49 C.F.R. § 376.12 in the lease, (2) required him to purchase or rent products, equipment and services from them, and (3) failed to pay him required compensation.

[2] Defendants Jeffrey M. Wagner and Henry Wagner are proceeding *pro se* in this matter. Jeff Wagner Trucking, LLC is unrepresented by counsel and has not moved for summary judgment, apparently because it was administratively dissolved as of September 10, 2013. (*See* Aff. of Jeffrey M. Wagner (dkt. #44) ¶ 4.)

granted Shimko the right to use a 2000 Peterbilt #16 truck and 2000 Utility Trailer; and (2) an Independent Contractor Driver Agreement ("IC Agreement"), through which Shimko granted his services as driver to JWT and agreed to transport loads for them.  These two agreements were executed the same day.  Each claims to be "the entire agreement between the parties" and disavows any amendment to that agreement except "in writing and by both parties."

The court granted defendants' first motion to dismiss because Shimko did not initially allege that he was an owner of the truck and trailer, and that he leased that equipment to defendants as an authorized carrier, which was required for the Truth-in-Leasing regulations to apply.  (*See* June 27, 2013 Opinion & Order (dkt. #24) 9-10 (Truth-in-Leasing regulations "apply only when an *owner* leases equipment to a *carrier*") (emphasis added).)  Shimko also failed to allege any facts about the parties' intentions or understanding that such a lease existed.  Rather, Shimko alleged only that *he* leased equipment from *defendants*.  Because that arrangement fell outside of the Truth-in-Leasing regulations, the court dismissed the lawsuit, while leaving open the possibility that Shimko could amend his complaint to cure the defects.[3]

Shimko subsequently sought leave to amend, this time alleging that after he leased the truck and trailer from defendants via the Equipment Lease, they entered into a leaseback arrangement, so defendants could use the equipment in their motor carrier business consistent with the parties' IC Agreement.  The court granted Shimko leave to amend over defendants' objections, while noting a number of "other, perhaps

---

[3] Shimko also asserted a claim for unjust enrichment, which was dismissed due to the existence of an express contract between the parties.

insurmountable hurdles," including the integration language in the agreements and the possibility that the regulations might not apply. (*See* Mar. 10, 2014 Opinion & Order (dkt. #29) 8-10.) Since the parties had not fully briefed those questions, however, the court declined to decide the issue on the pleadings.

MATERIAL FACTS[4]

At summary judgment, there is no dispute that Shimko had the exclusive right to use the truck and trailer during the term of the Equipment Lease, while JWT maintained title to it. There is also no dispute that this is what occurred in practice. In fact, according to Shimko, the truck and trailer Shimko acquired under the Equipment Lease was the *only* commercial motor vehicle equipment available to Shimko to fulfill his shipping obligations for JWT under the terms of the IC Agreement. In contrast, defendants contend that Shimko had the option of using any of JWT's vehicles. (Defs.' PFOF (dkt. #42) ¶ 21(b).)

Still, nothing in the parties' two written contracts *requires* that Shimko use the truck and trailer to transport loads under the IC Agreement, and the parties dispute whether this was their intent. Unsurprisingly, the parties also dispute whether they intended the arrangement to be subject to the Truth-in-Leasing regulations.

---

[4] Defendants filed proposed findings of fact with their motion. (Dkt. #42.) Shimko filed neither a response to those proposed findings of fact, nor *any* proposed facts of his own. This failure is remarkable given that defendants, who are acting *pro se*, substantially complied with the court's required procedures on summary judgment, while Shimko, who is represented by counsel, did not even make an attempt to do so. Under these circumstances, this court has the discretion to deem defendants' proposed findings undisputed. *See Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000). However, in light of Shimko's declaration, which was obviously offered to dispute certain proposed findings, the courts deems undisputed defendants' proposed findings of facts except where directly contradicted by that declaration.

Finally, while Jeffrey Wagner was actively engaged in running JWT during the time Shimko worked as an independent contractor, the parties dispute whether his father, Henry Wagner, played any role in running the business. Defendants aver that Henry Wagner never had any authority over JWT or its employees, contractors, customers or vendors, nor has he ever been personally engaged in JWT's business. In contrast, Shimko avers that if he wanted a payroll advance, loan or other remuneration, he was required to go through Henry Wagner and that it was his understanding that Henry Wagner controlled payroll and bookkeeping at JWT.

OPINION

**I.  Application of Truth-in-Leasing Regulations**

"A primary goal of [the federal Truth-in-Leasing] regulatory scheme is to prevent large carriers from taking advantage of individual owner-operators due to their weak bargaining position." *Owner Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., Inc. (AZ)*, 367 F.3d 1108, 1110 (9th Cir. 2004); *see also In re Arctic Express Inc.*, 636 F.3d 781, 795-96 (6th Cir. 2011) (describing intent of regulations and circumstances surrounding enactment). In service of this purpose, an "authorized carrier may perform authorized transportation in equipment it does not own only under" particular conditions. 49 C.F.R. § 376.11. For instance, the regulations require that all leases be in writing and contain certain basic provisions that are listed in section 376.12, to which the authorized carrier must adhere. *Id.* at § 376.11(a). The essence of Shimko's lawsuit is that defendants did not do so. (*See* Am. Compl. (dkt. #25) ¶¶ 24-26.)

However, the principal ground for defendants' motion for summary judgment is that the Truth-in-Leasing regulations do not apply in the first place. As previously discussed, the regulations govern only situations in which the owner of equipment leases that equipment to an authorized carrier. (*See* June 27, 2013 Opinion & Order (dkt. #24) 9-10.) Thus, to show the regulations apply, Shimko must present evidence that: (1) he was an "owner" of the truck and trailer as that term is defined in the regulations; and (2) he "leased" that equipment to defendants. This much Shimko has done.

### A. Ownership

The Truth-in-Leasing regulations define "owner" as "[a] person (1) to whom title to equipment has been issued, or (2) who, without title, has the right to exclusive use of equipment, or (3) who has lawful possession of equipment registered and licensed in any State in the name of that person." 49 C.F.R. § 376.2(d). Defendants contend that JWT, not Shimko, was the owner of the equipment, correctly pointing out that under the terms of the Equipment Lease, JWT, as lessor, was "deemed to have retained title to the equipment at all times." (Mot. Am. Compl. Ex. B (dkt. #25) ECF 18.)

As this court has previously recognized, the regulations' definition of "owner" permits dual ownership. (*See* June 28, 2013 Opinion & Order (dkt. #24) 8.) JWT may have retained title to the equipment at all times, but the regulations explicitly contemplate ownership "without title," so long as the person has "the right to exclusive use" of the equipment. 49 C.F.R. § 376.2(d). At least one other court has come to the same conclusion. *See Bonkowski v. Z Transport, Inc.*, No. 00 C 5396, 2004 WL 524723, at *2 (N.D. Ill. Mar. 5, 2004).

In light of the potential for dual ownership, Shimko has at least created a genuine dispute of fact as to whether he "owned" the truck and trailer under the regulations. In particular, he offers his own sworn declaration, stating that he had the "exclusive right to use" the truck and trailer, which if true would satisfy the second definition of "owner" under the regulations. (*See* Devin Shimko Decl. (dkt. #47) ¶ 9.) Indeed, defendants appear to concede this point, stating in their brief that the Equipment Lease "placed no conditions on Shimko's use of the equipment[.]" (Defs.' Br. Support Summ. J. (dkt. #43) 5.) Thus, defendants are not entitled to summary judgment on this basis.

In its previous opinion, the court noted that the Truth-in-Leasing regulations might not apply because they govern situations in which an authorized carrier is performing transportation "in equipment it *does not own*." 49 C.F.R. § 376.11 (emphasis added). In contrast, here, there is evidence of *dual* ownership -- meaning that defendants were performing transportation in equipment they *did* own, at least by title. Defendants do not press this point on summary judgment, and so the court need not address it in great detail. Even so, plaintiff rightly points out that the Truth-in-Leasing regulations themselves appear to contemplate the kind of lease-to-leaseback arrangement that Shimko claims was present here. *See, e.g.*, 49 C.F.R. § 376.12(i) ("The lease shall specify the terms of any agreement in which the lessor is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from the lessor's compensation for purchase or rental payments.").

Furthermore, the purpose of the regulations is to protect owner-operators from abusive practices and "promote the stability and economic welfare of the independent trucker segment of the motor carrier industry." *In re Arctic Express Inc.*, 636 F.3d at 796

6

(quoting *Owner–Operator Indep. Drivers Ass'n, Inc. v. Ledar Transp.*, No. 00–0258–CV–W–2–ECF, 2000 WL 33711271, at *3 (W.D. Mo. Nov. 3, 2000)). This purpose does not support distinguishing between truck drivers who own their trucks outright, and truck drivers who must lease their trucks from the carriers who then contract for their services, both of whom are vulnerable to larger carriers. In light of these facts, and given that defendants have not pursued the "does not own" language as grounds for escaping liability at summary judgment, the court declines to hold that defendants are exempt from the regulations because both Shimko and defendants technically "owned" the equipment.

B. Existence of a Lease

A more difficult, factual question is whether Shimko "leased" the equipment back to defendants under the regulations. Certainly, no formal, written lease existed in which *Shimko* granted use of the truck and trailer to *defendants*. However, "lease" is a term of art under the Truth-in-Leasing regulations and is defined as "[a] contract *or arrangement* in which the owner grants the use of equipment, with or without driver, for a specified period to an authorized carrier for use in the regulated transportation of property, in exchange for compensation." 49 C.F.R. § 376.2(e) (emphasis added). The *Bonkowski* court held that an informal oral arrangement can, therefore, constitute a "lease" subject to the regulations. 2004 WL 524723, at *3 ("The arrangement, as described and documented at trial, met [the definition of 'lease.'] . . . Because the agreement was entirely oral, it violated the regulations."). In its previous opinion granting Shimko leave to amend his complaint, this court agreed. (*See* Mar. 10, 2014 Opinion & Order (dkt. #29) 5-6.)

Defendants contend that there was no informal leaseback arrangement. In support, defendants rely on Jeffrey Wagner's affidavit, in which he avers that he "never considered, discussed, intended or consummated a lease agreement with Devin Shimko [] as Lessor and JWT as Lessee." (Jeffrey M. Wagner Aff. (dkt. #44) ¶ 7.) Jeffrey Wagner also avers that: (1) there was no requirement that Shimko use a particular truck to fulfill his obligations under the IC Agreement (*id.* at ¶ 35); and (2) the intent behind the Equipment Lease was to "start Shimko on the path to purchase the truck and trailer" (*id.* at ¶ 42), *not* to create a leaseback arrangement.

Of course, Shimko has offered his own sworn testimony that directly contradicts defendants' on key facts, and the court must credit Shimko's version at summary judgment, as well as draw all reasonable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). For instance, Shimko avers that the purpose of entering into the Equipment Lease was for him to lease the truck back to JWT, such that he would drive it exclusively for JWT's motor carrier business. (Devin Shimko Decl. (dkt. #47) ¶ 7.) Shimko also avers that during his time with JWT, "the only commercial motor vehicle equipment available to [him] to provide driver and equipment to accept dispatches by JWT was [the] equipment leased to [him] by JWT," belying Jeffrey Wagner's argument that Shimko could have used some other truck in transporting loads on JWT's behalf. (*Id.* at ¶ 5.) Crediting Shimko's testimony, a reasonable trier of fact could certainly find that the parties had "arranged" a *de facto* "leaseback" of the truck and trailer by Shimko to defendants for use in their motor carrier business.

8

### C. Integration

This does not end the inquiry, however, since defendants also argue that because the IC Agreement and Equipment Lease both contain integration language, the court is barred from considering any evidence outside those two documents (including Shimko's testimony). (*See* Mot. Am. Compl. Ex. A (dkt. #25) ECF 16 ("This document is the entire agreement between the parties."); *id.* at Ex. B, ECF 19 ("This Lease constitutes the entire agreement between the parties.").) Under Wisconsin law, "when [a] contract contains an unambiguous merger or integration clause, the court is barred from considering evidence of any prior or contemporaneous understandings or agreements between the parties, even as to the issue of integration." *Town Bank v. City Real Estate Dev., LLC*, 2010 WI 134, ¶ 39, 330 Wis. 2d 340, 793 N.W.2d 476.

Specifically, the language here implicates the parol evidence rule, which states:

> When the parties to a contract embody their agreement in writing and intend the writing to be the final expression of their agreement, the terms of the writing may not be varied or contradicted by evidence of any prior written or oral agreement in the absence of fraud, duress, or mutual mistake.

*Id.* at ¶ 36 (quoting *Dairyland Equip. Leasing, Inc. v. Bohen*, 94 Wis. 2d 600, 607, 288 N.W.2d 852 (1980)). Shimko latches onto the "fraud, duress, or mutual mistake" exception language of the rule, arguing that the integration clauses are irrelevant because "neither Shimko nor Defendants had the legal capacity to enter into the IC Agreement in the first place." (Pl.'s Br. Opp'n (dkt. #46) 6-7.)

To support his contention, Shimko relies entirely on the fact that JWT, which is referred to as "Broker" throughout the IC Agreement, cannot act as a "broker" under the terms of the regulations. Specifically, Shimko refers the court to 49 U.S.C. § 13102(2),

9

which defines "broker" as "a person, *other than a motor carrier* or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." *Id.* (emphasis added).

The regulations further interpret this definition:

> *Broker* means a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier. Motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport.

49 C.F.R. § 371.2. Essentially, the regulations suggest that a carrier is not *legally* a "broker" when it arranges to transport its own shipments.

What impact (if any) that fact has on the case at hand is unclear. Shimko claims that this alleged "misrepresentation" as to JWT's status was material because "it may have caused the Lease Agreement to fall outside the Truth-In-Leasing regulations." (Pl.'s Br. Opp'n (dkt. #46) 9.) This would only be so if: (1) JWT had represented it was a "broker *within the meaning of the regulations*; and (2) more importantly, that representation had some material bearing on the validity of the parties' agreement. Neither appears true. *First,* JWT only represented it was a "broker" as a matter of fact, not as narrowly defined in the Truth-in-Leasing regulations. *Second*, whether JWT was a "broker" under the regulations does not affect the application of the Truth-in-Leasing regulations.[5]

---

[5] Admittedly, the regulations are confusing and at times counterintuitive. To the extent that such a misrepresentation *would* be material, Shimko has certainly not demonstrated it.

10

The regulations do not make it *illegal* for JWT to arrange its own loads. "In fact, '[t]here is substantial precedent for granting broker's licenses to motor carriers.'" *Global Van Lines, Inc. v. I.C.C.*, 691 F.2d 773, 775 (5th Cir. 1982) (citation omitted). Thus, JWT could legally do the things it contracted to do -- that is, "[n]egotiate loads," "[p]rovide license plates, permits and evidence of authority" and "[i]nvoice customers for loads based on paper work provided by Contract Driver." (Mot. Am. Compl. Ex. A (dkt. #25) ECF 15.) This undermines Shimko's argument that the parties somehow lacked the "legal capacity" to enter into the IC Agreement.

Moreover, the fact that JWT was not actually a "broker" within the meaning of the regulations is of no particular moment. In fact, Shimko's focus on the word "broker" in the IC Agreement distracts from a larger problem with defendants' reliance on the integration language. The parol evidence rule states only that the terms of the written instruments may not be "*varied or contradicted*" by extrinsic evidence. *Town Bank*, 2010 WI 134, ¶ 36 (emphasis added) (quoting *Dairyland Equip.*, 94 Wis. 2d at 607). It "does not bar the enforcement of collateral or supplemental agreements, or evidence that explains the parties' agreement, if the agreements or other evidence do not vary or contradict the terms of the parties' contract." 1 *Contract Law in Wisconsin*, § 5.58 (4th ed. 2014); *see also Town Bank*, 2010 WI 134, ¶ 37 n.3 (recognizing "a limited exception to the parol evidence rule for contemporaneous or prior agreements that supplement, but do not conflict with, the contract.").

Here, none of the extrinsic evidence Shimko offers *contradicts* the IC Agreement or the Equipment Lease. To the contrary, Shimko's testimony that he granted the use of the truck and trailer to JWT for use in its transportation business is the missing piece in what

11

would otherwise be a curious arrangement indeed. Moreover, defendants point to nothing in either contract that conflicts with the contemporaneous understanding to which Shimko has testified. Accordingly, the integration clauses do not preclude the court from taking Shimko's testimony into account when determining whether Shimko "leased" the equipment back to JWT.

### D. Disputed Facts

With the integration clauses out of the picture, there can be no doubt that a reasonable factfinder could conclude a leaseback arrangement existed as the term is defined in the regulations if Shimko's version of the facts is credited. According to Shimko, he agreed to transport shipments on JWT's behalf in the IC Agreement in exchange for compensation. To do so, he granted them the use of a truck and trailer that he "owned" under the regulations. This constitutes the kind of "arrangement" that the regulations deem a "lease."[6] *See* 49 C.F.R. § 376.2(e).

Accordingly, the jury *could* find defendants liable for violations of those regulations (including, first and foremost, that the lease be "written," *id.* at § 376.11(a).) *Cf. Bonkowski*, 2004 WL 524723, at *3 ("Because the agreement was entirely oral, it violated the regulations."). Having failed to establish that the Truth-in-Leasing regulations do not apply on the undisputed facts, defendants are not entitled to summary judgment on this theory.

---

[6] To constitute a "lease," an arrangement must also be "for a specified period." 49 C.F.R. § 376.2(e). The IC Agreement itself does not contain an end date but instead can be terminated by either party upon seven days' notice. In contrast, the Equipment Lease is effective until December 31, 2009 (two years from the date it took effect). Since the equipment from the Equipment Lease *is* the equipment being used in the leaseback arrangement, the trier-of-fact might infer that Shimko granted defendants the use of the equipment for a two-year period under the terms of the entire arrangement (if not the IC Agreement).

**II. Henry Wagner's Involvement**

Defendants also ask the court to grant summary judgment on behalf of Henry Wagner, at least, on the ground that he was never involved in JWT's business and so cannot be held liable. Individuals, as well as companies, can be held liable for a violation of the Truth-in-Leasing regulations. *See* 49 C.F.R. § 390.13 ("No person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter."). However, the text of the regulations does not appear to impose strict liability on the employees of the authorized carrier. Rather, they must "aid, abet, encourage, or require" a violation before they are considered liable. If Henry Wagner was entirely uninvolved in JWT, as defendants contend, then he presumably cannot be liable for the alleged Truth-in-Leasing violations.

Most of Shimko's proffered evidence on this point fails to create a genuine dispute of fact on the issue of Henry Wagner's involvement. For instance, the court need not credit Shimko's conclusory statement, unsupported by record evidence, that Henry Wagner "exercised authority" over him during the term of the IC Agreement and Equipment Lease. *See Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004) ("We have repeatedly held that conclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment."). Nor is it clear from Shimko's sparse declaration how he would have the requisite personal knowledge to testify generally that "Henry Wagner played an active role in JWT." *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

The *only* specific fact to which Shimko has testified is that if he wanted a payroll advance, loan, or "any other sort of remuneration, [he] was required to go through Henry Wagner." (Devin Shimko Decl. (dkt. #44) ¶ 13.) While thin on detail, this is enough, if barely, to allow the court to infer that Henry Wagner may have aided and abetted in at least some of the violations that Shimko alleges. For instance, one of Shimko's theories is that JWT "retained funds without [his] authorization," "would not always pay [him] within fifteen (15) days after completing a load," and did not pay him when the IC Agreement was terminated.[7] (*Id.* at ¶ 11.) Taking as true Shimko's testimony that Henry Wagner controlled his remuneration, a reasonable jury could, though certainly would not be required to, find that Henry Wagner aided and abetted JWT in violating the Truth-in-Leasing regulations. Thus, he is not entitled to summary judgment.

**III. Damages**

Finally, Defendants briefly argue that Shimko's claims fail because he defaulted on the Equipment Lease by failing to make the required weekly payments for the truck and trailer. (*See* Defs.' Br. Support Summ. J. (dkt. #43) 7.) Assuming this to be true (since Shimko has proposed no facts to place it into dispute), it does not mean that Shimko's claims for violations of the *Truth-in-Leasing regulations* fail as a matter of law. Shimko may still be able to show at trial that defendants' failure to abide by the regulations was the cause of his failure to pay defendants timely or caused him damages in some other form. Accordingly, the court will not grant summary judgment on these grounds, either.

---

[7] This would at a minimum violate 49 C.F.R. § 376.2(f), which requires that the lessor be paid "within 15 days after submission of the necessary delivery documents and other paperwork concerning a trip in the service of the authorized carrier."

ORDER

IT IS ORDERED that defendants' motion for summary judgment (dkt. #41) is DENIED.

Entered this 24th day of December, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge